UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
CHRISTINA ALFANDARY, JEFFREY HANSEN, :
LAURIE VICARI, TIMOTHY MCCARTHY, :
BILL WILDER, FREDERICK REIDENBACH, :
AND GREGORY ATKINSON, :
 :
                    Plaintiffs,     :   17-cv-5137 (LAP)
 :
        -against-                   :
 :                                      OPINION AND ORDER
 :
NIKKO ASSET MANAGEMENT, CO., LTD., :
TAKUMI SHIBATA, SUMITOMO MITSUI :
TRUST BANK, LIMITED, AND SUMITOMO :
MITSUI TRUST HOLDINGS, INC., :
 :
                    Defendants.     :
 :
------------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

Following Judge Sweet's October 4, 2018 Opinion denying their motion to dismiss the Amended Complaint on the grounds of forum non conveniens and lack of personal jurisdiction (Opinion, dated Oct. 4, 2019 [dkt. no. 52]), Defendants Nikko Asset Management Co., Ltd. ("Nikko"), Takumi Shibata ("Shibata"), Sumitomo Mitsui Trust Bank, Limited ("SMTB"), and Sumitomo Mitsui Trust Holdings, Inc. ("SMTH") (collectively, "Defendants") moved for reconsideration. (Notice of Defendants' Motion for Reconsideration of October 4, 2018 Opinion Denying Defendants' Motion to Dismiss the Amended Complaint ("Motion for Reconsideration"), dated Oct. 18, 2018 [dkt. no. 55].)

1

For the reasons set forth below, the Motion for Reconsideration [dkt. no. 55] is denied.

## I. BACKGROUND

As familiarity with the factual background and procedural history of this case is assumed, only a short summary containing the relevant information will be provided.

Plaintiffs Timothy McCarthy, Frederick Reidenbach, Bill Wilder, and Gregory Atkinson (collectively, the "Nikko Plaintiffs") were all senior executives of Nikko. (Amended Complaint ("Am. Compl."), dated Sep. 20, 2017 [dkt. no. 19], ¶¶ 13-16.) Plaintiffs Christina Alfandary, Laurie Vicari ("Vicari"), and Jeffrey Hansen (collectively, the "NAMA Plaintiffs") were senior executives of Nikko Asset Management of America, Inc. ("NAMA") in New York, a wholly owned subsidiary of Nikko. (Id. ¶¶ 10-12, 20.)

Defendant Nikko is a privately-held investment advisor and asset manager, which is incorporated in Japan and has its principal offices in Tokyo. (Id. ¶ 17.) Defendant SMTB is an institutional investment manager that owns 91.6% of Nikko, and Defendant SMTH is a publicly traded company that owns 100% of the shares of SMTB. (Id. ¶¶ 18-19.) Defendant Shibata was Nikko's Executive Chairman from July 2013 to April 2014, at which time he assumed the roles of Representative Director,

President and CEO.  (Declaration of Takumi Shibata, dated Dec. 4, 2017 [dkt. no. 35], ¶ 2.)

In 2009 and 2011, Nikko established stock option plans (the "Plans") to retain existing employees and attract new talent. (Am. Compl. ¶¶ 31-32, 42.)  Under the Plans' terms, employees were awarded units of stock acquisition rights ("SARs").  (Id. ¶¶ 50-59).  The Plans' governing documents included (1) an "Allotment Agreement" signed on behalf of Nikko and by each grantee, and (2) accompanying "Terms and Conditions" describing the Plans.  (Id. ¶¶ 36-41, 43-49.)  All Plaintiffs were participants in the Plans and, pursuant to the Plans' terms, would retain units of SARs upon terminating their employment with NAMA or Nikko.  (Id. ¶¶ 121, 151.)  Around the time Plaintiffs signed the Allotment Agreements, the NAMA Plaintiffs also executed "Award Notices," which acknowledged that their Allotment Agreements are governed by Japanese law and that "any claim or dispute" regarding those Agreements, the Plans, or the SARs could only be litigated in Japan.  (See Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, dated Dec. 20, 2017 [dkt no. 31], 12; Declaration of Adam S. Hakki in Support of Defendants' Motion to Dismiss the Amended Complaint ("Hakki Decl."), dated Dec. 20, 2017 [dkt. no. 32]; id. at Exs. 18-22 [dkt. nos. 32-18-32-22].)

All Plaintiffs had terminated their employment with NAMA or Nikko by the end of 2015. (Am. Compl. ¶¶ 10-16). As part of their termination, the NAMA Plaintiffs each entered into a separation agreement with NAMA and "its current and former parents, subsidiaries, and affiliated entities, and their respective . . . officers, directors and employees" (the "Separation Agreements"). (Declaration of Marissa E. Miller, dated Feb. 26, 2018 [dkt. no. 46]; id. at Exs. 11-12 [dkt. nos. 46-12, 46-13]).[1] The Separation Agreements contain Defendants' express consent to the "exclusive jurisdiction of the courts of New York County, New York" for "any action regarding" the Agreements, as well as merger clauses in which the parties agree that the Separation Agreements "supersede[] and cancel[] all prior . . . written and oral agreements" between them. (Id.)

On September 20, 2017, Plaintiffs filed their Amended Complaint alleging, in sum, that Defendants fraudulently prevented them from deriving any value from the SARs and breached the terms of the Allotment Agreements in doing so. (See Am. Compl. ¶¶ 77-270.) Defendants subsequently moved to

---

[1] Although Vicari lost her employment file during a residential move (Affidavit of Laurie Vicari, dated Jan. 12, 2018 [dkt. no. 46-7], ¶¶ 15-16), "it was [allegedly] NAMA's regular business practice to negotiate the terms of separation with each of its departing executives," and those agreements covered "any vested SARs held in the employee stock option plans." (Affidavit of Christina Alfandary, dated Jan. 27, 2018 [dkt. no. 46-2], ¶ 36.)

4

dismiss the Amended Complaint on the ground of forum non conveniens, or, alternatively, for lack of personal jurisdiction. (Notice of Defendants' Motion to Dismiss the Amended Complaint, dated Dec. 20, 2017 [dkt. no. 30].) Judge Sweet denied that motion in its entirety in the Opinion. On October 18, 2018, Defendants moved for reconsideration of the Opinion. (See Motion for Reconsideration.)

## II. LEGAL STANDARD

Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Drapkin v. Mafco Consol. Grp. Inc., 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). Motions for reconsideration "are not vehicles for taking a second bite at the apple," Rafter v. Liddle, 288 F. App'x 768, 769 (2d Cir. 2008) (internal quotation marks and citation omitted), and "should not be granted where the moving party seeks solely to relitigate an issue already decided," Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Thus, such motions are properly granted only where the movant "can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader, 70 F.3d at 257. "The major grounds justifying reconsideration are an intervening change of controlling law,

5

the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation marks and citation omitted).

### III. DISCUSSION

#### A. Forum Non Conveniens

Defendants first assert that Plaintiffs' claims should have been dismissed on forum non conveniens grounds, arguing that the Opinion overlooked controlling law in determining that the Separation Agreements superseded and cancelled the Award Notices and that the Opinion did not resolve whether the claims of Plaintiff Vicari are subject to the forum selection clause in the Award Notice that she signed. (See Memorandum of Law in Support of Defendants' Motion for Reconsideration of October 4, 2018 Opinion Denying Defendants' Motion to Dismiss the Amended Complaint ("Defs.' Mem. Supp. Mot. Recons."), dated Oct. 18, 2018 [dkt no. 56], at 4-9.)[2] These arguments fail.

---

[2] Defendants also submit that, "if the Court dismisses the NAMA Plaintiffs' claims, it should reconsider its forum non conveniens decision with respect to the Nikko Plaintiffs" because "it would be unjust and inefficient to permit simultaneous litigation of identical claims in two fora." (Defs.' Mem. Supp. Mot. Recons. at 9.) Because the NAMA Plaintiffs' claims are not dismissed, see infra p. 6-8, there is no basis to reconsider the forum non conveniens decision with respect to the Nikko Plaintiffs.

As for the significance of the merger clauses in the Separation Agreements, the Opinion expressly states that "'[u]nder New York law, it is well established that a subsequent contract regarding the same matter will supersede the prior contract.'" (Opinion at 25 (quoting Applied Energetics, Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011))).[3] The Opinion likewise notes Defendants' belief that the Separation Agreements and the Award Notices covered different subject matter and were not in conflict. (See id. at 23.) However, the Opinion ultimately rejects that position based on an analysis of the contractual language. (See, e.g., id. at 8-9 (summarizing allegations that the Separation Agreements covered "any vested [stock acquisition rights] held in the employee stock option plans") (internal citation and quotation marks omitted); id. at 24 (explaining that parties here "entered into multiple agreements specifying different mandatory forums for dispute resolution"); id. at 26-27 (quoting the Separation

---

[3] Defendants contend that the Opinion overlooked the law set forth in Primex Int'l Corp. v. Wal-Mart Stores, Inc., 89 N.Y.2d 594 (1997), which held that where "'an antecedent agreement has no effect to vary, contradict or supplement the terms of a later agreement containing the merger clause, the prior agreement remains enforceable.'" (Defs.' Mem. Supp. Mot. Recons. at 4-5 (quoting Primex, 89 N.Y.2d at 600).) However, the portion of Applied Energetics quoted in the Opinion stands for the same point, as Defendants apparently recognize. (See Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint, dated Apr. 2, 2018 [dkt. no. 48], at 4.)

7

Agreements, which were intended to "cancel[] all prior" agreements, and concluding that "there is little doubt the Integration Clauses of the Separation Agreements . . . were in fact intended to supersede conflicting portions of . . . the Award Notices").)

With respect to Vicari's claims, the Opinion observes that Vicari lost her employment file during a residential move, (id. at 8), and that Defendants assert an absence of any record of a Separation Agreement for Vicari (id. at 25 n.5). However, the Opinion also recognizes that it was allegedly NAMA's regular business practice to negotiate the terms of separation with each of its departing executives, covering, among other things, any vested SARs held under the Plans. (Id. at 8-9.) Having acknowledged these points, the Opinion resolves the issue in refusing to dismiss the NAMA Plaintiffs' claims—which necessarily include the claims of Vicari—on forum non conveniens grounds. (Id. at 23.)

Accordingly, Defendants have not shown that the Opinion's forum non conveniens decision warrants reconsideration.

**B. General Personal Jurisdiction**

Defendants next seek reconsideration of the Opinion's holding that Nikko is subject to general personal jurisdiction in the United States. Specifically, Defendants argue that the

8

Opinion overlooked two principles announced in Daimler AG v. Bauman, 571 U.S. 117 (2014): (1) that Daimler's holding would have been the same even if the U.S. subsidiary were at home in the forum and its contacts were attributable to its foreign parent; and (2) assessing whether a foreign corporation is "at home" in the forum requires an appraisal of its activities in their entirety and on a worldwide basis. (See Defs.' Mem. Supp. Mot. Recons. at 10-11; Reply Memorandum of Law in Further Support of Defendants' Motion for Reconsideration of October 4, 2018 Opinion Denying Defendants' Motion to Dismiss the Amended Complaint, dated Nov. 21, 2018 [dkt. no. 63], at 9-10.)

The Opinion, however, did not merely find general personal jurisdiction on the ground that Nikko "provides advisory services in the United States through NAMA and because NAMA's principal place of business is in New York." (Defs.' Mem. Supp. Mot. Recons. at 10.) Instead, after acknowledging the advisory services and NAMA's principal place of business, the Opinion went on to note additional facts, including: Nikko's registration and numerous filings with the SEC; that Nikko is the majority owner and control person of NAMA; the personnel and structural overlap between Nikko and NAMA; that Nikko senior executives repeatedly traveled from Tokyo to New York office to discuss with NAMA employees, among other things, the Plans; and that Nikko sent grants of stock to at least 39 employees in the

9

United States. (See Opinion at 33-34). In light of these contacts with the United States, the Opinion's finding of general jurisdiction as to Nikko did not overlook Daimler's holding that "[e]ven . . . assum[ing] that [the subsidiary] is at home [in the forum], and further . . . assum[ing] [the subsidiary's] contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." 571 U.S. at 136 (emphasis added).[4]

Nor did the Opinion fail to consider Nikko's worldwide contacts. On the contrary, the 47-page Opinion repeatedly speaks of such contacts, particularly Nikko's contacts with Japan. (See, e.g., Opinion at 3 ("Defendants are Japanese nationals . . . [and] Nikko . . . is incorporated in Japan and has its principal offices in Tokyo"); id. at 5 ("[The Stock Option Plans and Allotment Agreements] signed by each of the Plaintiffs . . . were written in Japanese"); id. at 15-23 (describing Japanese contacts as part of forum non conveniens analysis); id. at 32 ("While Nikko is incorporated and maintains its principal place of business in Japan, this Court nonetheless has general jurisdiction over it"); id. at 35 (in the context of

---

[4] Notably, the plaintiffs in Daimler "did not challenge on appeal the District Court's holding that Daimler's own contacts with California were, by themselves, too sporadic to justify the exercise of general jurisdiction." 517 U.S. at 133-34.

10

specific jurisdiction, noting that "Nikko sent . . . [offers to purchase SARs granted under the Plans] to former employees in other countries")). More importantly, as Defendants admit, (see Defs.' Mem. Supp. Mot. Recons. at 10), the Opinion explicitly cites a footnote from Daimler explaining that "[g]eneral jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide" in finding that Nikko is subject to general jurisdiction in the United States. (Opinion at 34 (citing Daimler, 571 U.S. at 139 n.20)). As such, it can hardly be said that the Opinion overlooked this principle.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Reconsideration [dkt. no. 55] is denied. The Clerk of the Court shall mark this motion terminated.

SO ORDERED.

Dated:   New York, New York
         June 19, 2019

_____
LORETTA A. PRESKA
Senior United States District Judge