USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
CHRISTINA ALFANDARY, JEFFREY HANSEN,
LAURIE VICARI, TIMOTHY MCCARTHY,
BILL WILDER, FREDERICK REIDENBACH,
AND GREGORY ATKINSON,

        Plaintiffs,        17 Civ. 5137 (LAP)

   -against-              OPINION

NIKKO ASSET MANAGEMENT, CO., LTD.,
TAKUMI SHIBATA, SUMITOMO MITSUI
TRUST BANK, LIMITED, AND SUMITOMO
MITSUI TRUST HOLDINGS, INC.,

        Defendants.
------------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

The Court issues this opinion to set forth the reasoning behind its November 25, 2019 order [dkt. no. 87] on Defendants' motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [dkt no. 64]. As stated in the November 25, 2019 order, Defendants' motion is denied as to Plaintiffs' contract claims and granted as to all other claims.

I. Background

On September 20, 2017, Plaintiffs filed an Amended Complaint ("Am. Compl." [dkt. no. 19]) asserting claims against Defendants for violations of federal securities laws, common law fraud, aiding and abetting common law

1

fraud, conspiracy to commit common law fraud, breach of contract, and for a declaratory judgment. In short, Plaintiffs allege that Defendants implemented a scheme to deprive Plaintiffs of their corporate stock option rights by rigging the process for valuing the options and forcing Plaintiffs either to exercise the options at fraudulently low prices or to give them up altogether.[1]

On December 14, 2018, Defendants moved to dismiss the Amended Complaint in its entirety under Rule 12(b)(6). (See Notice of Motion dated Dec. 14, 2018 [dkt. no. 64].) The Court issued an initial ruling on the 12(b)(6) motion on September 30, 2019, dismissing Plaintiffs' securities fraud claims for failure adequately to allege reliance and loss causation. (MTD II Order at 16.) The Court also held that it would exercise supplemental jurisdiction over Plaintiffs' common law claims but deferred ruling on those claims until the parties advised the Court on how they proposed to proceed with the case. (Id. at 17-20.) By

---

[1] The Court assumes the parties' familiarity with the underlying facts in this case, which are set forth in detail in three prior orders. See Opinion dated Oct. 4, 2019 [dkt. no. 52] ("MTD I Order"); Opinion dated September 30, 2019 [dkt. no. 79] ("MTD II Order"); Opinion dated June 19, 2019 [dkt. no. 78] ("Reconsideration Order"). In the analysis below, the Court only refers to facts necessary for resolving the outstanding issues in Defendants' Rule 12(b)(6) motion.

letters dated October 15, 2019 [dkt. nos. 81, 82], the parties indicated that they intended to continue litigating in federal court and asked the Court to resolve Defendants' Rule 12(b)(6) motion as to the remaining common law claims.

At the Court's request, the parties submitted supplemental letter briefs examining how the MTD II Order affected the viability of the common law claims. (See Letter dated Nov. 7, 2019 ("Defs. Ltr. Br.") [dkt. no. 84]; Letter dated Nov. 14, 2019 ("Pltfs. Ltr. Br.") [dkt. no. 85].) On November 25, 2019, after the close of briefing, the Court issued a summary order [dkt. no. 87] dismissing all of Plaintiffs' claims except their breach of contract claims and granting Plaintiffs leave to replead their fraud claims. The Court also stated that it would issue a follow-on memorandum explaining the basis for its decision. This is that memorandum.

II. Legal Standard

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

3

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). Put differently, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

III. Discussion

The Court concludes that, like their federal securities fraud claims, Plaintiffs' common law fraud claims fail on reliance and causation grounds. Because the conspiracy and aiding and abetting claims are derivative of the fraud claim, they must be dismissed, as well. Plaintiffs' breach of contract claims survive dismissal, but their declaratory judgment claim is dismissed as duplicative of the contract claim.

a. Fraud Claims

To plead a cause of action for fraud under New York law, plaintiffs must allege, among other things, that they "justifiabl[y] reli[ed]" on a "material misrepresentation of a fact," Eurycleia Partners, LP v. Seward & Kissel, LLP,

4

12 N.Y.3d 553, 559 (N.Y. 2009), and that the defendant's misrepresentations "directly caused" their losses, Laub v. Faessel, 745 N.Y.S.2d 534, 536 (N.Y. App. Div. 1st Dep't 2002). As many courts have recognized--and as Plaintiffs themselves do not seriously dispute--these requirements are indistinguishable from the reliance and loss causation elements for securities fraud claims. See, e.g., Ashland Inc. v. Morgan Stanley & Co., 700 F. Supp. 2d 453, 471 (S.D.N.Y. 2011) ("The elements of common law fraud are much the same as the elements of securities fraud in violation of Section 10(b) of the Securities Exchange Act."), aff'd, 652 F.3d 333 (2d Cir. 2011).[2]

In the MTD II Order, the Court ruled that Plaintiffs' securities fraud claims failed because "[t]he connection between Plaintiffs' harm and Defendants' alleged misrepresentations is simply too remote to satisfy [the

---

[2] Plaintiffs cite Joseph v. Mobileye, N.V., 225 F. Supp. 3d 210, 220 (S.D.N.Y. 2016) as a case purportedly highlighting differences between the standards for pleading reliance in securities fraud cases and common law fraud cases. (Pltfs. Ltr. Br. at 6.) But Joseph only addressed whether--under the framework for an unsuitability claim under Exchange Act § 10(b), on the one hand, and for a misrepresentation claim on the other--the plaintiff may justifiably rely on misleading oral statements that are contradicted by securities offering materials, a scenario not at issue here. Joseph, 225 F. Supp. 3d at 220. Plaintiffs provide no reason as to why Joseph's analysis is relevant to this case, and the Court finds none.

5

elements of] reliance or causation." (MTD II Order at 16.) That same finding applies to, and compels dismissal of, Plaintiffs' common law fraud claims. See, e.g., Ashland, 652 F.3d at 339 (affirming dismissal of securities fraud claim for failure to plead reliance and dismissal of common law fraud claim on the same grounds); Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP, No. 17 Civ. 1235, 2019 WL 1436993, at *12 (S.D.N.Y. Mar. 30, 2019) ("Because, as explained above, Plaintiffs fail . . . to adequately plead loss causation with respect to their claims against Schmitz under Section 10b and Rule 10b-5, the Court also dismisses Plaintiffs' common-law fraud claims.").

b. Aiding and Abetting and Conspiracy Claims

Plaintiffs also allege causes of action for aiding and abetting and conspiracy to commit common law fraud. (Am. Compl. ¶¶ 212-24.) These are not freestanding claims—their viability depends on the existence of a well-pleaded underlying tort. See Nabathkhorian v. Nabathkhorian, 127 A.D.3d 1043, 1043 (N.Y. App. Div. 2d Dep't 2015) (to establish a claim for aiding and abetting fraud, the plaintiff "must allege the existence of an underlying fraud"); ACR Sys., Inc. v. Woori Bank, 14 Civ. 2817, 2018 WL 1757019, at *6 (S.D.N.Y. Apr. 10, 2018) (to establish conspiracy to commit fraud, the plaintiff must first

establish a viable fraud claim). Because Plaintiffs have not adequately alleged common law fraud, their aiding and abetting and conspiracy claims fail, as well.

   c. <u>Breach of Contract Claims</u>

Defendants challenge Plaintiffs' breach of contract claims on two main grounds. First, they contend that the claims are barred by waiver of liability clauses contained in the stock option allotment agreements. (<u>See</u> Defs. Mem. at 24.) Second, they argue that the stock option plan documents expressly permitted Defendants to do what Plaintiffs now attack as improper. (<u>Id.</u> at 24-25.) Both arguments fail.

      i. <u>Whether the Waiver Clauses Bar Plaintiffs' Claims</u>

The stock option allotment agreements Plaintiffs signed contained a clause titled "Waiver of Claim for Damages," providing that "[t]he Grantee shall not for any reason whatsoever, in connection with this Agreement, claim compensation for loss, additional profit, compensation for damages, or pursue any other liabilities against the Company and the Company's directors, etc." (Declaration of Adam S. Hakki dated Dec. 14, 2018 ("Hakki Decl.") [dkt. no. 66] Exs. 1 & 3, Art. 16; Ex. 5, Art. 17.) Defendants argue

that these clauses foreclose Plaintiffs' breach claims; Plaintiffs contend that the clauses are unenforceable.

The parties disagree on what law governs the waiver clauses. Defendants contend that Japanese law applies across the board, while Plaintiffs contend that New York law controls the agreements entered into by at least Plaintiffs Alfandary and Hansen. (See Defs. Mem. at 24 & n.7; Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint dated Feb. 27, 2019 ("Opp.") [dkt. no. 68] at 23 & n. 24); Pltfs. Ltr. Br. at 9-10.) But irrespective of which law applies, the Court concludes that the waiver clauses do not compel dismissal of the contract claims at this point.

### 1. Japanese Law

Under Japanese law, the enforceability of the waiver clauses hinges on whether the stock option allotment agreements fall within the scope of Japan's Consumer Contract Act (the "Act"). Plaintiffs argue that if the Act applies, then the waiver clauses are invalid, because the clauses would impermissibly prohibit Plaintiffs from enforcing their contractual rights. (See Opp. at 23; Declaration of Hirohiko Ikeda dated Feb. 27, 2019 [dkt. no. 69] ¶ 14 (stating that a contractual provision that a party is "not liable for any reason whatsoever" would be "null

8

and void" under the Act).) Defendants do not appear to dispute Plaintiffs' position that if the Act applies, the waivers are unenforceable. (See Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss, dated Mar. 29, 2019 ("Reply") [dkt. no. 70] at 10.)

Both sides have submitted evidence from Japanese law experts regarding the Act's applicability. (Declaration of Professor Keizo Yamamoto dated Feb. 23, 2018 ("Yamamoto Decl.") [dkt. no. 45]; Declaration of Masahiro Sakata dated Mar. 28, 2019 ("Sakata Decl.") [dkt. no. 71].) The experts do not see eye-to-eye on how the Act applies, but, notably, even Defendants' expert does not rule out categorically the possibility that the allotment agreements could fall within the Act's scope. Defendants' expert notes, for example, that government agencies carry considerable weight in determining how the laws they oversee should be interpreted and that the agency administering the Act has advised that stock option contracts "generally"--but, significantly, not invariably--fall outside its purview. (See Sakata Decl. at ¶¶ 8, 17 (emphasis added).)[3]

---

[3] On the other hand, Plaintiffs' expert--the former Chairman of a government committee focusing on consumer protection legislation--takes the view that stock option agreements like those at issue here do fall within the scope of the Act. (See Yamamoto Decl. ¶¶ 7, 41-55.)

9

In another equivocation, Defendants' expert states that it is "doubtful"--but, implicitly, not out of the question--that the Act would apply to stock option contracts between a company and high-level employees like Plaintiffs, because the Act is designed to protect individuals with weak bargaining power and there is "usually" no power disparity between a company and its executives. (See Sakata Decl. ¶ 16.) Defendants' evidence on Japanese law therefore raises fact questions outside the pleadings and is inconclusive on whether the Act actually governs the allotment agreements here. Accordingly, the Court finds no basis to conclude as a matter of law that the waiver clauses bar Plaintiffs' contract claims.

2. New York Law

Applying New York law, the Court again rejects Defendants' argument that the waiver clauses compel dismissal of the breach of contract claims. Under New York law, waiver provisions that "exonerate" parties from liability for "willful or grossly negligent acts" are unenforceable. Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y.2d 377, 384-85 (1983). Here, Plaintiffs allege that Defendants engaged in intentional misconduct, including by subverting the contractual mechanisms for valuing Plaintiffs' stock options to render the options worthless.

The waiver clauses do not insulate Defendants from liability for that kind of alleged misconduct. See id. at 385 ("[A]n exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing.").[4]

   ii. Whether Defendants Allegedly Breached the Contracts

Defendants' second argument for dismissing the contract claims is that the contracts purportedly permitted Nikko Asset Management Co., Ltd. ("Nikko") to force former employees to sell their options back to the company before an initial public offering ("IPO"). (See Defs. Mem. at 24-25.) In support of that argument, Defendants cite paragraph 2.(10)(v)(b)(x) of the Terms and Conditions for the allotment agreements, which provide as follows:

> (b) In the case where the Company has not yet implemented the IPO as of the date on which the holder of the Stock Acquisition Rights lost the Position with the Company:

---

[4] Defendants contend that under federal law, "anticipatory waivers of common law claims in connection with the purchase and sale of securities are fully enforceable." (Defs. Mem. at 24 n.7.) But the case they cite in support of that proposition--Pasternak v. Shrader, 863 F.3d 162, 171-74 (2d Cir. 2017)--is inapposite because it does not speak to whether, under New York law, a party may waive liability for intentional misconduct like that alleged in the Amended Complaint.

11

>     (x) Period during which the Stock Acquisition Rights may be exercised:
>
>     On or prior to the day three (3) months after the IPO. Provided, however, that if on or prior to the last day of such period the Company has granted the holder of the Stock Acquisition Rights an opportunity to request the Company to purchase the Stock Acquisition Rights (including any alternative action equivalent thereto), the Stock Acquisition Rights shall become unexercisable as of the purchase date which shall be specified by the Company. For the avoidance of doubt, the foregoing proviso shall apply regardless of whether the holders of the Stock Acquisition Rights have requested the purchase of the Stock Acquisition Rights or not.

(Hakki Decl. Exs. 2, 4 & 6 ¶ 2.(10)(v)(b)(x); see also Defs. Mem. at 24-26; Reply at 10.)

Defendants' reading of paragraph 2.(10)(v)(b)(x) of the Terms and Conditions--i.e., that former employees "lost the right to exercise their SARs if Nikko offered to purchase their SARs before implementation of an IPO" (Defs. Mem. at 24)--finds no support in the text itself. Paragraph 2.(10)(v)(b)(x) states that if employees left the company before an IPO, they had three months after the IPO to exercise their rights and that the company could force them to sell the rights back to it during that 3-month period. It does not state, as Defendants contend, that the company could force former employees to sell their rights

12

back before an IPO. Defendants' position is meritless and provides no grounds for dismissing the contract claims.

d. Declaratory Judgment

Plaintiffs' final claim is for a declaratory judgment as to their rights under the stock option agreements. (Am. Compl. ¶¶ 266-70.) The Court agrees with Defendants that this claim should be dismissed because Plaintiffs' rights under the agreements will be resolved through the contract claim. A separate claim for declaratory judgment "will serve no useful purpose" and is unwarranted. See Miramax Film Corp. v. Abraham, No. 01 Civ. 5202, 2003 WL 22832384, at *15 (S.D.N.Y. Nov. 25, 2003) ("Where the declaratory relief sought is already encompassed within the substantive claims, plaintiff can obtain the requested relief without aid of a separate declaratory judgment claim.").

e. Forum Non Conveniens

In their supplemental letter brief, Defendants argue that if the Court dismisses Plaintiffs' fraud-related claims, as it does here, the Court should also dismiss the contract claims on forum non conveniens grounds. (See Defs. Ltr. Br. at 7-10.) The Court has already examined the forum non conveniens issue in two previous orders. (See MTD I Order at 15-27; Reconsideration Order at 6-8.) By inviting supplemental briefing on the implications of

the Court's MTD II Order, the Court was not opening the door for reargument on forum non conveniens. (See Order dated October 31, 2019 [dkt. no. 83].) The Court has nonetheless considered Defendants' arguments and finds them unavailing. Even with the dismissal of the fraud claims, the balance of factors the Court previously considered in denying Defendants' forum non conveniens motion remains largely undisturbed. Among other things, Plaintiffs' claims are still against a foreign entity; some of Plaintiffs' separation agreements still have New York forum selection clauses; and it still appears that certain evidence pertaining to Plaintiffs' claims is located in New York. (See Pltfs. Ltr. Br. at 7-10.) Against that backdrop, Defendants' arguments fail to overcome the strong presumption favoring Plaintiffs' choice of forum. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.")

IV. Conclusion

For the foregoing reasons, and as stated in the Court's November 25, 2019 order [dkt. no. 87], Defendants' motion to dismiss [dkt. no. 64] is DENIED as to Plaintiffs' claims for breach of contract and GRANTED as to all other claims. Plaintiffs may amend their fraud claims.

SO ORDERED.

Dated: New York, New York
December 6, 2019

_____
LORETTA A. PRESKA
Senior United States District Judge