UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINA ALFANDARY, et al.,

                    Plaintiffs,,

          -against-

NIKKO ASSET MANAGEMENT, CO.,
LTD.

                    Defendant.

No. 17 Civ. 5137 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court are the parties' letters seeking to modify the Protective Order entered on December 16, 2019[1] and to enjoin Defendant Nikko Asset Management Co., Ltd. ("Nikko" or "Defendant") from pursuing certain legal action in Tokyo.[2] Construing those letters as the parties' moving papers and oppositions, (1) Defendant shall show cause why it should not be sanctioned for use in the Tokyo Action of information obtained in discovery in this action in contravention of the Protective Order [dkt. no. 90], (2) and Plaintiffs' motion for an anti-suit injunction [dkt. no. 117] is DENIED.  The Court reserves decision on the cross motions to modify the Protective Order

_____

[1] (See Defendant's Motion for Local Rule 37.2 Conference ("Mot."), dated Jan. 6, 2021 [dkt. no. 115]; see also Defendant's Reply Letter ("Def. Reply"), dated Feb. 5, 2021 [dkt. no. 121].)
[2] (See Plaintiffs' Response Letter ("Response"), dated Feb. 2, 2021 [dkt. no. 117]; see also Plaintiffs' Reply Letter ("Pls. Reply"), dated Mar. 17, 2021 [dkt. no. 134].)

[dkt. nos. 115, 117] pending resolution of the order to show cause.

### I.  **Background**

The Court assumes familiarity with this dispute's general background, which has been set forth in three prior Opinions. (Opinion, dated Oct. 4, 2018 [dkt. no. 52]; Opinion, dated June 19, 2019 [dkt. no. 78]; and Opinion, dated Sept. 30, 2019 [dkt. no. 79].)  The Court briefly recounts the facts here.

### a. **Facts**

Plaintiffs are former senior executives of either Nikko, its New York-based wholly owned subsidiary, Nikko Asset Management of America, Inc. ("NAMA"), or its European operating subsidiary, Nikko Asset Management Europe ("NAME"), who contend Defendant intentionally undervalued their stock acquisition rights ("SARs").  (Amended Complaint ("Am. Compl."), dated Dec. 26, 2019 [dkt. no. 91], ¶¶ 2, 190-231.)  Defendant is a privately held investment advisor and asset manager headquartered and incorporated in Tokyo, Japan.  (Id. ¶ 25.)

At issue in these specific motions are Plaintiff Mr. Reidenbach's Separation Agreement and the subsequent action Defendant filed against him to enforce it.

On December 14, 2020, Nikko sued Mr. Reidenbach in Tokyo District Court for violating his April 2015 Separation Agreement.  (Mot. at 1; see also Response at 2.)  In addition to

designating Tokyo District Court as the exclusive forum for

claims arising out of its provisions, the Separation Agreement

provides, in relevant part, that Mr. Reidenbach:

> (i) shall not (with exceptions not applicable here)
> disclose to any third party any confidential information of
> Nikko which he "obtained in his capacity as an employee or
> director of" Nikko; (ii) "agrees . . . to waive irrevocably
> and release and forever discharge" Nikko from "any and all
> . . . claims or demands whatsoever (whether existing,
> potential, in the future or otherwise) . . . "; and (iii)
> "represents and warrants that he has not filed nor will
> file or will otherwise be involved in, directly or
> indirectly, any lawsuits, arbitrations or any other legal
> action . . . against [Nikko]."

(Mot. at 1-2 (emphasis omitted) (quoting Separation Agreement,

dated Apr. 30, 2015 [dkt. no. 115-1], ¶¶ 9, 14(Ex. 1)).)

    Defendant claims that Mr. Reidenbach breached the

Separation Agreement by divulging confidential information to

the Plaintiffs and by joining this lawsuit.[3]  (See Mot. at 2.)

Additionally, Defendant asserts that it neither used nor

referenced any confidential discovery in this case when

commencing the Tokyo Action and obtaining ex parte liens against

Mr. Reidenbach's assets.[4]  (Id.; see also Response at 2.)

---

[3] Among other things, Defendant avers that Mr. Reidenbach
provided Plaintiffs with "a detailed analysis of his objections
to the valuation, based on his knowledge of that process as CFO
and his access to Nikko's non-public information" and "internal
management reports presented to Nikko's Board of Directors."
(Mot. at 2.)
[4] The Protective Order issued on December 16, 2019 states "[a]ll
Confidential Information hereafter produced or disclosed shall
be used only in connection with this litigation, and shall not
(continued on following page)

However, because some confidential discovery material allegedly relates to Mr. Reidenbach's purported breaches of his Separation Agreement, Defendant asks the Court to modify the Protective Order "[i]n the interests of promoting judicial efficiency and avoiding duplicative discovery."[5]  (Mot. at 2-3.)

According to Plaintiffs, Defendant's motion furthers the "improper objective[s]" of "punish[ing] Mr. Reidenbach for blowing the whistle on [Nikko's] own unlawful conduct . . . [and] discourag[ing] him through retaliatory threats from pursuing this lawsuit any further."  (Response at 4.) Plaintiffs point out that, before commencing the Tokyo Action, Defendant placed liens on all of Mr. Reidenbach's personal property without providing him with any notice or opportunity to be heard.  (Pls. Reply at 1.)  Additionally, Plaintiffs emphasize the untimeliness of the Tokyo Action.  Despite knowing of Mr. Reidenbach's purported breaches for over five years, (see Certified Translation of Nikko's Petition for Order of Provisional Seizure, dated Dec. 14, 2020 [dkt. no. 117-1], at

_____

(continued from previous page)
be used in connection with any other lawsuit or for any other purpose whatsoever."  (Protective Order, dated Dec. 16, 2019 [dkt. no. 90], ¶ 9.)
[5] Paragraph 18 of the Protective Order permits the parties to request "an Order seeking to modify the [Protective Order's] terms . . . or for any other relief . . . regarding [the Protective Order] or the issue of confidentiality."  (Protective Order ¶ 18.)

11), Defendant "waited until Plaintiffs had produced their own confidential documents and until [Nikko] had the opportunity to depose Mr. Reidenbach and eight other Plaintiffs" about topics relevant to the Tokyo Action to bring suit.  (Pls. Reply at 1.) Plaintiffs, therefore, ask the Court to infer that Defendant's "extreme delay in commencing the Tokyo Action reveals that it could not have done so without making use of confidential information obtained through discovery in this case."  (Id.; see also Pls. Reply at 2.)

To protect against the misuse of discovery materials available in this litigation, Plaintiffs seek to amend the Protective Order to prohibit the use of all discovery material-- whether or not designated as confidential--for any purpose outside this litigation.  (Response at 5.)  Plaintiffs also request an anti-suit injunction to enjoin Nikko from pursuing the allegedly retaliatory Tokyo Action while this lawsuit is pending.  (Id. at 5-7; see also Pls. Reply at 2.)

## II.  Legal Standards

### a. Modification of a Protective Order

Rule 26(c) of the Federal Rules of Civil Procedure authorizes federal courts to issue orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  Fed. R. Civ. P. 26(c).  These protective orders are subject to modification, and the decision

of "whether to lift or modify a protective order is . . . committed to the sound discretion of the trial court." S.E.C. v. TheStreet.com, 273 F.3d 222, 231 (2d Cir. 2001) (citation omitted).  However, "[w]hen litigants have reasonably relied on a protective order, . . . the court should not modify that order 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'"  Nielson Co. (U.S.), LLC v. Success Sys., Inc., 112 F. Supp. 3d 83, 120 (S.D.N.Y. 2015) (quoting TheStreet.com, 273 F.3d at 229).  In determining whether a party has reasonably relied on a protective order, courts consider: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order."  In re Unseal Civ. Discovery Materials, No. 19-MC-00179 (SN), 2021 WL 1164272, at *3 (S.D.N.Y. Mar. 24, 2021) (citation omitted).

### b. Issuance of an Anti-Suit Injunction

Federal courts may enjoin the parties before them from pursuing litigation in foreign forums.  Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004).  However, in the interests of international comity, anti-suit injunctions should "be used sparingly" and "granted only with care and great restraint."  China Trade & Dev. Corp. v. M.V. Choong Yong, 837

F.2d 33, 36 (2d Cir. 1987) (internal quotation marks omitted).
Accordingly, the Court of Appeals "has consistently held that an
anti-suit injunction may only be granted where two threshold
requirements are met: first, the parties must be the same in
both proceedings, and second, resolution of the case before the
enjoining court must be dispositive of the action to be
enjoined." Eastman Kodak Co. v. Asia Optical Co., 118 F. Supp.
3d 581, 586 (S.D.N.Y. 2015) (articulating the China Trade test).

Once China Trade's two threshold requirements are
satisfied, the Court of Appeals directs courts to consider
additional factors, including:

> (1) the threat to the enjoining court's jurisdiction posed
> by the foreign action; (2) the potential frustration of
> strong public policies in the enjoining forum; (3) the
> vexatiousness of the foreign litigation; (4) the
> possibility of delay, inconvenience, expense,
> inconsistency, or a race to judgment; and (5) other
> equitable considerations.

Id. (citing Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan
Minyak Dan Gas Bumi Negara, 500 F.3d 111, 119-20 (2d Cir.
2007)).  Although courts must consider all of the discretionary
factors, the Court of Appeals has accorded "greater
significance" to the first two.  Karaha Bodas, 500 F.3d at 126.

**III.   Discussion**

Defendant has moved to modify the Protective Order to
permit the use of Plaintiffs' confidential discovery material
from this case in the Tokyo Action.  (Mot. at 2-3; Def. Reply at

2-3.)  In response, Plaintiffs request the Court to modify the
Protective Order to prohibit the use of any discovery materials
in this case for any other purpose.  (Response at 5; Pls. Reply
at 2.)  Separately, Plaintiffs request an anti-suit injunction
to enjoin Defendant from pursuing the Tokyo Action.  (Response
at 5-7; Pls. Reply at 2.)  The Court addresses each in turn.

### a. <u>The Motions to Modify the Protective Order</u>

While ordinarily a court will freely grant a party
permission to use discovery in one case in a related case to
promote efficiency and the "inexpensive determination of every
action," Fed. R. Civ. P. 1, here the facts set out in
Plaintiffs' letters (Response at 4-5; Pls. Reply at 1-2) lead to
a fair inference that Defendant misused confidential discovery
materials from this case in commencing the Tokyo Action.  The
inference arises from both the timing and the substance of the
Tokyo Action.

As to the timing of the Tokyo Action, even though, as noted
above, Defendant "was aware of [the] alleged conduct when it
occurred in 2015 and reminded of the same in 2017 when the
complaint in this action was first filed," Nikko waited another
three years--until discovery concluded in this litigation--to
commence the Tokyo Action.  (Pls. Reply at 2.)  As to both
timing and substance, the Tokyo Action was filed just days after
Defendant took depositions of nine Plaintiffs and questioned

them about topics relevant to the Tokyo Action, including "their interactions with Mr. Reidenbach, as well as the extent to which their effort to challenge [Nikko's] unlawful conduct was motivated or informed by Mr. Reidenbach's contemporaneous knowledge."  (Response at 2.)

In light of these facts, the Court finds it to be a fair inference that Defendant commenced the Tokyo Action using confidential materials subject to the Protective Order. Accordingly, Defendant shall show cause why it should not be sanctioned for use in the Tokyo Action of information obtained in discovery in this action in contravention of the Protective Order.

### b. **The Motion to Enjoin the Tokyo Action**

Plaintiffs' request for an anti-suit injunction fails to satisfy the threshold requirements of the China Trade test.  It is undisputed that the first threshold requirement--that the parties are the same in both proceedings--is met.  See Paramedics Electromedicina, 369 at F.3d at 652 (finding that the parties need not be exactly identical; only "substantial similarity" between the parties is required).  However, the second requirement, that this proceeding would be dispositive of the Tokyo Action, is not met.

Although the Court of Appeals has not articulated precisely what it means for an action to be dispositive, it has instructed

courts to determine first whether the "substance" of the claims is the same in the two actions.  See Karaha Bodas, 500 F.3d at 121.  Where the cause of action alleged in the foreign action is distinct from that alleged in the domestic proceeding, the domestic proceeding's resolution may not be dispositive of the foreign action.  See C.D.S., Inc. v. Zetler, 213 F. Supp. 3d 620, 628-29 (S.D.N.Y. 2016).  However, "[t]here is no requirement that the two actions be identical." Eastman Kodak, 118 F. Supp. 3d at 588 (citing Karaha Bodas, 500 F.3d at 121-22).

While the claims in this case and the Tokyo Action are related, they do not share the same "substance" because they concern different contracts.  This case focuses on whether Nikko breached the Allotment Agreement and Terms and Conditions of its stock option plans in connection with its valuation and extinguishment of Plaintiffs' SARs.  (See Am. Compl. ¶¶ 2, 190-231.)  The Tokyo Action, on the other hand, examines whether Mr. Reidenbach breached his Separation Agreement by violating his confidentiality obligations and covenant not to sue.  (Mot. at 1; see also Response at 2.)  Because the two proceedings will turn on different issues, arguments, and evidence, a finding that Nikko violated Plaintiffs' SARs would have little bearing on the Tokyo Action.  (See Def. Reply at 4.)

10

Plaintiffs contend that the second threshold requirement is satisfied because a judgment in the Tokyo Action could be dispositive of the claims in this case.  (See Response at 6.) This analysis is precisely backwards.  The law requires the resolution of the case before this Court to be dispositive of the subsequent foreign action--not vice versa.  See Karaha Bodas, 500 F.3d at 121.  See also C.D.S., 213 F. Supp. 3d at 628 (stating that the "resolution of the first action must be dispositive of the action to be enjoined").  Therefore, for the reasons discussed above, Plaintiffs have failed to satisfy the threshold requirements of the China Trade test.

Even if the resolution of the claims before this Court would be dispositive of the Tokyo Action, the most important discretionary factors counsel against issuing an anti-suit injunction.  First, the Tokyo Action does not threaten this Court's jurisdiction.  By pursuing its claims in the only forum where they could be brought under the Separation Agreement's forum selection clause, Defendant is neither "collateral[ly] attack[ing] . . . this Court's prior rulings" nor "circumvent[ing] this Court's jurisdiction."  (Response at 5.) Second, public policy considerations do not appear to be substantially frustrated by allowing a substantively different lawsuit to proceed in the only forum where Defendant could enforce its contractual rights.  (See Def. Reply at 5.)

11

The Court shares Plaintiffs' concerns that the Tokyo Action seeks to silence Mr. Reidenbach and punish him for blowing the whistle on Nikko's alleged unlawful scheme to eliminate Plaintiffs' SARs.  (See Response at 7; Pls. Reply at 2.)  However, the Court acknowledges that "vexatiousness" is "likely to be present whenever parallel actions are proceeding concurrently."  China Trade, 837 F.2d at 36.  Moreover, issuing an anti-suit injunction based on vexatiousness alone would "undermine the policy that allows parallel proceedings to continue and disfavors anti-suit injunctions."  Id.

"[P]rinciples of international comity and reciprocity require a delicate touch in the issuance of anti-foreign suit injunctions . . . ."  Ibeto Petrochemical Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 65 (2d Cir. 2007).  Accordingly, even if Plaintiffs satisfied the China Trade test's threshold requirements, the discretionary factors would counsel against issuing an anti-suit injunction.

## IV.  Conclusion

For the foregoing reasons, Defendant shall show cause why it should not be sanctioned for use in the Tokyo Action of information obtained in discovery in this action in contravention of the Protective Order [dkt. no. 90].  Counsel shall confer and inform the Court by letter no later than May 3, 2021, of a proposed briefing schedule on the order to show

cause.  Pending resolution of the order to show cause, the Court reserves decision on the cross motions to modify the Protective Order [dkt. nos. 115, 117].  Plaintiffs' separate motion for an anti-suit injunction [dkt. no. 117] is <u>DENIED</u>.  The Clerk of the Court shall close the open motion.


**<u>SO ORDERED</u>**.

Dated:    New York, New York
          April 22, 2021

_____
LORETTA A. PRESKA
Senior United States District Judge