UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINA ALFANDARY, et al.,

Plaintiffs,

-against-

NIKKO ASSET MANAGEMENT CO., LTD.,

Defendant.

No. 17-CV-5137 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Nikko Asset Management Co. Ltd.'s ("NAM") motion for summary judgment.[1] Defendant contends that this Court lacks jurisdiction over NAM,[2] (Def.'s Br. at 3-11), that venue is improper because the forum provisions of the Award Notices[3] govern, (id. at 11-15), and that Defendant is

[1] (See Defendant NAM's Notice of Motion for Summary Judgment, dated Apr. 1, 2021 [dkt. no. 137]; Defendant NAM's Memorandum of Law in Support of its Motion for Summary Judgment ("Def.'s Br."), dated Apr. 1, 2021 [dkt. no. 138]; Defendant NAM's Reply Memorandum of Law in Further Support of its Motion for Summary Judgment ("Def.'s Reply Br."), dated May 17, 2021 [dkt. no. 150].)

[2] Specifically, Defendant argues that NAM is not subject to specific personal jurisdiction for claims brought by the eleven Plaintiffs who did not work for Nikko Asset Management Americas, Inc. ("NAMA") (the "Non-NAMA Plaintiffs"). (See Def.'s Br. at 6.) The parties do not dispute that the Non-NAMA Plaintiffs did not work for NAMA. (See Plaintiffs' Rule 56.1 Objections and Counter-Statement ("CSF"), dated May 3, 2021 [dkt. no. 146] ¶¶ 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 51.)

[3] It is undisputed that the four Plaintiffs who worked for NAMA (the "NAMA Plaintiffs") signed Award Notices in connection with receiving Stock Acquisition Rights ("SARs") pursuant to one or more Stock Option Plans (the "Plans") established by NAM. (See CSF ¶¶ 54-55.)

entitled to summary judgment on Plaintiffs' claims challenging NAM's extinguishment of Plaintiffs' Stock Acquisition Rights ("SARs") based on NAM's interpretation of the SARs' Terms and Conditions, (id. at 15-20). Plaintiffs oppose the motion.[4]

Detailed descriptions of the underlying facts have been set forth in three prior Opinions. (Opinion ("MTD Op."), dated Oct. 4, 2018 [dkt. no. 52]; Opinion and Order ("Recons. Op."), dated June 19, 2019 [dkt. no. 78]; Opinion and Order, dated Sept. 30, 2019 [dkt. no. 79].) Accordingly, the Court assumes the parties' familiarity with the facts and describes them only for purposes of resolving the instant motion. For the reasons stated below, Defendant's motion is GRANTED in part and DENIED in part.

## I. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of demonstrating the absence of a genuine dispute of fact, and, to award summary judgment, the court must be able to find after drawing all

[4] (See Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Br."), dated May 3, 2021 [dkt. no. 145].)

reasonable inferences in favor of a non-movant that no reasonable trier of fact could find in favor of that party." Palmer/Kane LLC v. Rosen Book Works LLC, 204 F. Supp. 3d 565, 568 (S.D.N.Y. 2016) (citation and internal quotation marks omitted). Where the non-moving party bears the burden of proof at trial, the moving party may discharge its summary judgment burden in "two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Farid v. Smith, 850 F.2d 917, 924 (2d Cir. 1988)).

In assessing the record, the Court "must view the evidence in the light most favorable to the [non-moving] party," Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quotation marks omitted), and "resolve all ambiguities and draw all reasonable inferences against the movant," Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 427 (2d Cir. 2013). At the same time, "the mere existence of some alleged factual dispute" is not enough to prevent summary judgment—the dispute must be material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." Id. at 248. It is well settled that

"[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Curry v. City of Syracuse, 316 F.3d 324, 333 (2d Cir. 2003). Finally, "conclusory statements or mere allegations are not sufficient to defeat a summary judgment motion." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (alterations omitted) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## II. Discussion

### a. In Personam Jurisdiction over NAM

#### i. General Jurisdiction Over NAM

Defendant contends that this Court should dismiss the Non-NAMA Plaintiffs' claims for lack of personal jurisdiction because Defendant is not subject to general personal jurisdiction before this Court. (See Def.'s Br. at 4-6.) Plaintiffs counter that because Judge Sweet and this Court have decided this issue twice "on the basis of a nearly identical factual and legal record," the law of the case doctrine forecloses Defendant's argument. (Pls.' Br. at 3.) Defendant rebuts Plaintiffs' position, contending that "rulings made on motions to dismiss are [not] law of the case at summary judgment" and that reconsideration is warranted because (1) eight plaintiffs were added to the case and all federal

securities claims were dismissed after Judge Sweet denied Defendants'[5] motion to dismiss Plaintiffs' First Amended Complaint ("FAC") on personal jurisdiction, and (2) extensive discovery has occurred. (See Def.'s Reply Br. at 1-2.)

As a threshold matter, the Court first determines whether the law of the case doctrine applies. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). As such, a court generally will not reconsider its prior ruling unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Id. (cleaned up). However, "because of the divergent standard of review applicable to motions to dismiss and motions for summary judgment, the law of the case doctrine is inapposite to the Court's analysis of whether, after the close of discovery, genuine issues of fact have been raised which survive summary judgment." Bank Leumi USA v. Ehrlich, 98 F. Supp. 3d 637, 647 (S.D.N.Y. 2015) (cleaned up). Given the

---

[5] Whereas Plaintiffs sued NAM, Takumi Shibata ("Shibata"), Sumitomo Mitsui Trust Bank, Limited ("SMTB"), and Sumitomo Mitsui Trust Holdings, Inc. ("SMTH") in the FAC, Plaintiffs only sued NAM in the Second Amended Complaint ("SAC"). (See SAC, dated Dec. 26, 2019 [dkt. no. 91].)

divergent standard of review at this stage, the Court agrees with Defendant that the law of the case doctrine does not apply to Defendant's argument regarding general personal jurisdiction. Thus, the Court next analyzes the parties' arguments regarding general personal jurisdiction based on the evidence revealed in discovery.

Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over Defendant, Waldman v. Palestine Liberation Org., 835 F.3d 317, 334 (2d Cir. 2016),[6] and "the exercise of personal jurisdiction must comport with constitutional due process principles." Id. at 327 (quotation marks omitted). To determine whether exercising jurisdiction over a defendant is constitutionally permissible, the Court considers (1) "whether the defendant has sufficient [minimum] contacts with the forum state," and (2) "whether the assertion of personal jurisdiction [is reasonable in that it] comports with 'traditional notions of fair play and substantial justice.'" Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567-68 (2d Cir. 1996) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

[6] See Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) ("After discovery, the plaintiff's prima facie showing . . . must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.").

The minimum contacts requirement distinguishes between specific and general jurisdiction. Metro. Life Ins., 84 F.3d at 567. Specific jurisdiction exists only when "the defendant has purposefully directed his activities at residents of the forum," and the alleged injuries "arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal quotation marks omitted). General jurisdiction, on the other hand, exists where the defendant's affiliations with the forum state are "so 'continuous and systematic' as to render [it] essentially at home" in that state.[7] Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting Int'l Shoe, 326 U.S. at 317); see Daimler AG v. Bauman, 571 U.S. 117, 122 (2014).

While a corporation's "paradigm bases for general jurisdiction" are its place of incorporation and principal place of business, Daimler, 571 U.S. at 137 (cleaned up), the Second Circuit has identified another situation wherein a plaintiff may establish general jurisdiction in accordance with N.Y. C.P.L.R. § 301: where a subsidiary corporation is a "mere department" of its parent corporation. See Volkswagenwerk Aktiengesellschaft

[7] In other words, a court can exercise general jurisdiction over a foreign corporation when "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Goodyear, 564 U.S. at 924 (quoting Int'l Shoe, 326 U.S. at 318).

v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984) [hereinafter "Beech"]. Post-Daimler, a few courts in this district have expressed doubts as to the applicability of the mere department theory[8] because in Daimler, the Court rejected the Ninth Circuit's reliance on an agency theory to impute the in-state subsidiary's contacts to the parent corporation.[9] Other courts in this district, however, have applied the theory to facts substantially like those here[10] because the mere department theory "is not exactly the same as the agency theory"—it "does not consider the same factors or have the same requirements" and "does not focus solely on whether the parent corporation would

[8] See In re Aluminum Warehousing Antitrust Litig., 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (noting that the mere department theory "has at the very least been called into doubt by Daimler"); NYKCool A.B. v. Pac. Int'l Servs., Inc., 66 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) ("[T]he Court in Daimler expressed some doubt about the constitutionality of subjecting a company to general jurisdiction under the mere department or agency theory.").

[9] "The Ninth Circuit's agency finding rested primarily on its observation that [the in-state subsidiary's] services were 'important' to [the parent corporation], as gauged by [the parent's] hypothetical readiness to perform those services itself if [the subsidiary] did not exist. . . . The inquiry into importance . . . will always yield a pro-jurisdiction answer: Anything a corporation does through [a] . . . subsidiary . . . is presumably something that the corporation would do by other means if the . . . subsidiary . . . did not exist." Daimler, 571 U.S. at 135–36 (cleaned up).

[10] See Int'l Diamond Importers, Inc. v. Med Art, Inc., No. 15-CV-4045, 2017 WL 2839640, *2–*4 (S.D.N.Y. June 29, 2017) (establishing general jurisdiction over defendant based on the mere department theory); Mercer Health & Benefits LLC v. DiGregorio, 307 F. Supp. 3d 326 (analyzing general jurisdiction under the mere department theory but concluding, based on the facts, that none of the four requirements were met).

perform the services if the subsidiary was absent from the jurisdiction." Mercer Health, 307 F. Supp. 3d at 345. Accordingly, the Court next considers whether the mere department theory applies to impute NAMA's New York contacts to Defendant.

Whether a subsidiary is a mere department of its parent corporation depends on four factors, i.e., the Beech test: "1) common ownership; 2) financial dependence of the subsidiary on the parent corporation; 3) the degree of interference in personnel selection and a failure to observe corporate formalities; and 4) the degree of control the parent corporation wields over the subsidiary's marketing and operational policies." Int'l Diamond Importers, 2017 WL 2839640, *2 (citing Beech, 751 F.2d at 120-22). Common ownership is the "essential factor," whereas the other three factors "comprise a balancing test." Yousef v. Al Jazeera Media Network, No. 16-cv-6416, 2018 WL 1665239, at *6 (S.D.N.Y. Mar. 22, 2018).

Plaintiffs argue that Defendant is subject to this Court's general jurisdiction because Defendant's substantial degree of control over NAMA makes NAMA a "mere department" of Defendant. (See Pls.' Br. at 5-6.) When an in-state subsidiary is a "mere department" of its foreign parent corporation, a court may extend general jurisdiction over the parent corporation by imputing to it the subsidiary's forum state contacts. See Int'l

Diamond Importers, 2017 WL 2839640, at *2; Mercer, 307 F. Supp. 3d at 343. Here, because of NAMA's "undisputed and systematic contacts with [New York]," Plaintiffs contend that under the "mere department" theory, such contacts "must be imputed to NAM." (See Pls.' Br. at 5.) Defendant concedes that "NAMA's jurisdictional contacts may be imputed to [NAM]." (See Def.'s Reply Br. at 2-3.) However, Defendant contends that imputation, without more, is not enough to make NAMA a "mere department;" instead, Defendant propounds a mere department-plus analysis. (See id. at 3.) The mere department-plus analysis requires not only that the parent be "at home" in the relevant forum, but also consideration "of the corporation's in-state activities . . . in the context of the entirety of the corporation's worldwide activities."[11] (Id. at 3-4 (citing Daimler, 571 U.S. at 138-39 and n.20).)

---

[11] Defendant relies on the following facts to support this argument: (1) Defendant is incorporated in Japan and has its principal offices in Tokyo; (2) Defendant's Board of Directors and Executive Committee meet exclusively in Japan; (3) the majority of Nikko Group employees are not based in the United States, and 99% of its clients are non-United States-based persons; and (4) in fiscal years 2009, 2017, and 2019, only 1% of Nikko Group entities total net revenue was derived from the United States. (See Def.'s Br. at 4-5.) These facts are undisputed, (see CSF ¶¶ 11-16), except that Plaintiff argues that Defendant's assertion that "Nikko is incorporated in Japan and has its principal place of business in Tokyo" "states a legal conclusion as it relates to Nikko's principal place of business, not a factual contention, and is improper under Local Rule 56.1(a)," (see id. ¶ 7).

Defendant's proposed mere department-plus theory fails. Cases post-Daimler have not required consideration of the defendant-corporation's in-state and worldwide activities.[12] Defendant only cites Daimler and Brown v. Lockheed Martin Corp. to support its position. (See Def.'s Br. at 5 (citing Daimler, 571 U.S. at 139 n.20; Brown v. Lockheed Martin Corp., 814 F.3d 619, 629 (2d Cir. 2016).) However, in neither case did the court engage in a mere department analysis.

Turning to the first factor of the Beech test, Defendant and NAMA are commonly owned, in part, because NAMA is an indirect wholly owned subsidiary of NAM.[13] Moreover, it is undisputed not only that NAMA's Form ADV lists NAMA's New York City office as "one of [NAM's] branch offices or affiliates," but also that Defendant represented that NAM and NAMA are "under common control."[14] (RSF ¶ 186.) Thus, the foregoing facts indicate, at a minimum, "nearly identical ownership interests." See Int'l Diamond Importers, 2017 WL 2839640, at *3-*4 (internal

[12] See Int'l Diamond Importers, 2017 WL 2839640, at *2-*4; Mercer, 307 F. Supp. 3d at 343-46.

[13] (See Defendant Nikko Asset Management Co., Ltd.'s Reply in Support of its Local Rule 56.1 Statement of Facts and Response to Plaintiffs' Counter-Statement of Facts ("RSF"), dated May 17, 2021 [dkt. no. 151] ¶ 160.) Defendant does not dispute this fact solely for purposes of NAM's motion for summary judgment. (Id.; see also Paysys Int'l, Inc. v. Atos SE, No. 14 Civ. 10105, 2015 WL 4533141, at *3 n.22 (S.D.N.Y. July 24, 2015) (common ownership found where subsidiary was wholly owned by parent).)

[14] Defendant does not dispute this fact solely for purposes of NAM's motion for summary judgment. (RSF ¶ 186.)

quotation marks omitted). Accordingly, the Court finds that Plaintiffs satisfied the first prong of the Beech test.

Turning to the second factor, it is undisputed that NAMA is financially dependent on NAM.[15] The following facts, which Defendant does not dispute for purposes of NAM's motion for summary judgment, indicate that NAMA would not be able to function without NAM's financial support: (1) "NAM is a guarantor of the lease for NAMA's office space in New York City," (RSF ¶ 161); (2) "NAMA's largest source of revenue was management fees from NAM," (id. ¶ 165); (3) "NAM was NAMA's largest client for research services, and effectively dictated the terms of any intercompany fee arrangement to NAMA," (id. ¶ 166); (4) NAMA's financial reporting practices were subject to NAM's control, (id. ¶ 184); and (5) "NAMA's financial results are consolidated into [NAM's] financial statements," (id.

[15] A subsidiary is financially dependent on its parent corporation if, among other things, "the parent provides a no-interest loan, or controls the subsidiary's finances." Int'l Diamond Importers, 2017 WL 2839640, at *3; see Yousef, 2018 WL 1665239, at *7 ("Financial dependence for jurisdictional purposes 'requires not merely that the parent have some control over the finances of the subsidiary, but that the subsidiary would not be able to function without the financial support of the parent.'" (quoting Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 157 (S.D.N.Y. 2004))).

¶ 186).[16] Accordingly, the Court finds that Plaintiffs satisfied the second prong of the Beech test.

Regarding the third factor, the Court finds that Defendant substantially interferes with NAMA's selection of executive personnel and fails to observe corporate formalities. It is undisputed that NAM directly controlled NAMA's board of directors, which effectively exercised no supervision or control over NAMA, its employees, or its officers. (Id. ¶ 181.) Additionally, a "member of NAM's board also serves as a director of NAMA."[17] (Id.) It is also undisputed that (1) NAM's Global Executive Committee "advise[s] on and communicate[s] to Nikko Group the strategy and priorities of the Group's businesses in Japan and internationally," (CSF ¶ 12); and (2) NAM's hiring committee and global department heads in Tokyo controlled all of NAMA's hiring and firing decisions, (RSF ¶ 174). Accordingly, the Court finds that Plaintiffs satisfied the third prong of the Beech test.

Finally, regarding the fourth factor, it is undisputed that "[n]early all aspects of NAMA's business operations were subject

[16] See Int'l Diamond Importers, 2017 WL 2839640, at *3 (financial dependence found where parent "funded [subsidiary's] initial capital investment," "provided 99% of [subsidiary's] products for sale," "earned profits from those sales," and "regularly reviewed [subsidiary's] financial records" (cleaned up)).

[17] See Int'l Diamond Importers, 2017 WL 2839640, at *3 (third prong satisfied where the sole officer and director of the parent was also the subsidiary's CEO).

to control by NAM executives, who frequently made decisions for NAMA in Japan with no input from NAMA executives in New York."[18] (Id. ¶ 168.) Further, NAMA's Form ADV lists NAMA as "one of [NAM's] branch offices or affiliates." (Id. ¶ 186 (citation omitted).) As such, the Court finds that Plaintiffs satisfied the fourth prong of the Beech test. Accordingly, adopting the "mere department" theory, this Court finds that NAMA is a "mere department" of NAM such that subjecting NAM to general jurisdiction in New York is constitutionally permissible.

Turning to the due process analysis, imputing NAMA's New York contacts to Defendant is reasonable in light of the substantial nature of such contacts. The Second Circuit considers the following factors when analyzing "reasonableness": "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." In re Aluminum, 90 F.

---

[18] Each functional department at NAMA is required to "report to a NAM global department head in Tokyo," which also "controlled every facet of NAMA's actions." (RSF ¶ 167). For example, NAM's Head of Compliance had to approve NAMA's written compliance manual before NAMA could adopt it. (Id. ¶ 185.)

Supp. 3d at 225 (internal citation marks omitted) (citing Asahi Metal Indus. Co. v. Superior Ct. of Cal., 480 U.S. 102, 113 (1987)).

As a threshold matter, unlike in Daimler,[19] here, NAMA is incorporated in the forum state—New York—and has its "principal and exclusive place of business" there. (See Pls.' Br. at 9.) Moreover, NAMA was established "as a standalone corporate entity with the expectation that NAMA would be 'at home' here in New York, and thereafter [NAM] used NAMA—controlling [NAMA] on a day-to-day basis—as a means for achieving its own ends in this forum." (Id.) Accordingly, if subjected to jurisdiction in New York, Defendant's burden is minimal due to its substantial connections to New York through NAMA and the substantial nature of such connections give New York an interest in resolving this conflict.[20]

In sum, NAMA is a mere department of NAM to such an extent that NAM is "essentially at home" in New York, and thus exercising general jurisdiction over NAM based on NAMA's New

[19] In Daimler, the Court held that subjecting Daimler to general jurisdiction would violate due process because neither Daimler nor its subsidiary was incorporated or had its principal place of business in the state. See Daimler, 571 U.S. at 139.

[20] See Int'l Diamond Importers, 2017 WL 2839640, at *7 ("The burden on [the parent corporation] to litigate is tempered by its substantial connection to New York, through [its New York subsidiary]. Moreover, the state of New York has an interest in resolving conflicts between business owners . . . .").

York contacts is constitutionally permissible. Accordingly, Defendant's motion for summary judgment on the Non-NAMA Plaintiffs' claims for lack of general personal jurisdiction is denied.

ii. Specific Jurisdiction Over NAM for Non-NAMA Plaintiffs' Claims

Defendant contends that this Court should dismiss the Non-NAMA Plaintiffs' claims for lack of specific personal jurisdiction because "[t]here is simply no record evidence that the claims of the 11 Non-NAMA Plaintiffs arise out of or relate to Nikko's activities in this forum.[21] (See Def.'s Br. at 6-7.) Plaintiffs oppose, arguing that the Court has specific personal jurisdiction over NAM with respect to Non-NAMA Plaintiff Veronica Minukas' claims because "she resided in New York as of NAM's second breach and there received from NAM the transmission that devalued and extinguished her SARs." (Pls.' Br. at 11.) Having found that the Court has general personal jurisdiction over NAM, the Court need not adjudicate this claim. Accordingly, Defendant's motion for summary judgment on the Non-

[21] At this stage, the Court need not adjudicate whether specific jurisdiction exists for NAMA-Plaintiffs' claims as Defendant did not move for summary judgment on the grounds that the Court lacks specific personal jurisdiction over NAM for NAMA-Plaintiffs' claims. (See RSF ¶¶ 208-09.)

NAMA Plaintiffs' claims for lack of specific personal jurisdiction is denied.

b. Proper Venue for the NAMA Plaintiffs' Claims

Defendant raises three arguments for why NAM is entitled to summary judgment on claims asserted by Christina Alfandary ("Alfandary"), Jeffrey Hansen ("Hansen"), Laurie Vicari ("Vicari"), and Robert Corcoran ("Corcoran") (together, the "NAMA Plaintiffs") based on the forum selection clause in the Award Notices that Plaintiffs signed in connection with their SARs grants. (See Def.'s Br. at 11-15.) The Court addresses each argument in turn.

i. Whether the Separation Agreements Supersede the Award Notices

Defendant's primary argument for dismissing claims brought by Alfandary, Corcoran, and Hansen is that the forum selection clause in Plaintiffs' Award Notices designates Tokyo District Court as "'the exclusive court of competent jurisdiction to adjudicate any claim or dispute arising in connection' with the Plans or their SARs." (Def.'s Br. at 11.) Defendant argues that discovery has shown "that enforcement of the Award Notices (which were signed by Nikko) 'has no effect to vary, contradict or supplement the terms of' the Separation Agreements (which were signed by NAMA)" because the two contracts involve different subject matter, so the New York forum clause of the

Separation Agreements does not supersede the Japan forum clause of the Award Notices. (Id. at 13.) Plaintiffs oppose arguing that this Court has twice rejected Defendant's argument. (See Pls.' Br. at 13.) The Court agrees with Plaintiffs; the third time is not the charm for Defendant.

The Court first revisits what the Court considered in evaluating Defendants' position that the Separation Agreements and the Award Notices covered different subject matter and were not in conflict to determine if discovery since the Court's original decision and reconsideration would alter the Court's analysis. In adjudicating Defendants' motion for reconsideration of Judge Sweet's order denying Defendants' motion to dismiss the FAC on grounds of forum non conveniens, (see MTD Op.), the Court "ultimately reject[ed]" Defendants' position that "the Separation Agreements and the Award Notices covered different subject matter and were not in conflict" "based on [the Court's] analysis of the contractual language." (Recons. Op. at 7.) Specifically, Judge Sweet held that the later-executed Separation Agreements for Alfandary and Hansen[22] were fully integrated because those agreements contained a

[22] Corcoran was not a party at the time of either Judge Sweet's or this Court's prior decision; however, the parties do not dispute that the material terms of Corcoran's Separation Agreement are the same as Alfandary's and Hansen's Separation Agreements. (See Pls.'s Br. at 12 n.13; CSF ¶¶ 60-62.)

merger clause that "supersedes and cancels all prior and contemporaneous written and oral agreements" between Nikko and Alfandary and Hansen.[23] (MTD Op. at 26.) Based on Judge Sweet's interpretation of the integration clauses, the Court held that there was "little doubt the Integration Clauses of the Separation Agreements . . . were in fact intended to supersede conflicting portions of all prior agreements, including the Award Notices."[24] (MTD Op. at 27.) Thus, the Court's determination that the Separation Agreements are integrated as a matter of law rested on uncontroversial principles of construing an unambiguous agreement.[25]

---

[23] It is an undisputed fact that Alfandary's, Corcoran's, and Hansen's NAMA Separation Agreements contain this merger clause. (See CSF ¶ 62.) On reply, Defendant argues that "the Separation Agreements do not purport to incorporate the Plan documents." (Def.'s Reply Br. at 9.) The Court disagrees based on the merger clause in the Separation Agreements.

[24] Defendant argues that "[w]ithout the benefit of discovery, Judge Sweet determined that, by virtue of the general merger clause in their Separation Agreements, the NAMA Plaintiffs would have believed that those Agreements superseded and cancelled their Award Notices." (Def.'s Br. at 12 (footnote omitted).) Defendant misses the point. What the NAMA Plaintiffs would have believed is irrelevant, as Judge Sweet determined that the Separation Agreements forum selection clause superseded based on contractual construction. (MTD Op. at 27.)

[25] "Under New York law, the Court can determine whether a document 'appears complete on its face [and] is an integrated agreement as a matter of law.'" Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd., 483 F. Supp. 3d 195, 207 (S.D.N.Y. 2020) (quoting Morgan Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp., 269 F. Supp. 2d 206, 213 (S.D.N.Y. 2003)).

Plaintiffs argue that the Court would violate the parol evidence rule if the Court considered Defendant's proffered evidence regarding which forum selection clause controls. (See Pls.' Opp. at 14.) This Court agrees. "The parol evidence rule generally prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements to explain the meaning of a contract that the parties have reduced to an unambiguous integrated writing." Gualandi v. Adams, 385 F.3d 236, 241 (2d Cir. 2004). In fact, Defendant agrees that "[i]t is generally understood that the purpose of an integration clause 'is to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing.'" (Def.'s Br. at 13); Ross Stores, Inc. v. Lincks, No. 13 Civ. 1876, 2013 WL 5629646, at *2 (S.D.N.Y. Oct. 4, 2013) (quoting Dujardin v. Liberty Media Corp., 359 F. Supp. 2d 337, 356 (S.D.N.Y. 2005)); see also Ohr Somayach/Joseph Tanenbaum Edu. Ctr., 483 F. Supp. 3d at 207 ("Where a contract contains an express merger or integration clause, the parties have expressed an intent that the written contract constitutes the entirety of the parties' agreement, and parol evidence is likely to be barred."). Because the Separation Agreements have merger clauses and the Court previously held that the agreements were integrated, the parol evidence rule bars the Court from considering Defendant's

evidence, specifically, evidence that the Award Notices and the Separation Agreements involved different subject matter.[26] (See Def.'s Br. at 13.) Accordingly, Defendant's motion for summary judgment on the NAMA Plaintiff's claims based on the forum provisions of the Award Notices is denied.

ii. Whether Corcoran Released His 2009 SAR Claim

Defendant argues that Corcoran's 2009 SAR claims are barred because he did not join this lawsuit as a plaintiff in 2017[27] before signing his NAMA Separation Agreement.[28] (See Def.'s Br. at 15.) Plaintiffs oppose, contending that Defendant cannot have its cake and eat it too. (See Pls.' Br. at 16.) Plaintiff's position is that Defendant cannot argue both that the Award Notices and the Separation Agreements involve different subject matter but that Corcoran released his 2009 SAR claims upon signing his Separation Agreement.[29] (See id.) The

---

[26] As support for its proposition that discovery "reveals no genuine dispute that the Award Notices survived the Separation Agreements and thus remain in effect," Defendant cites to CSF ¶ 63. (See Def.'s Br. at 12.) However, Plaintiffs dispute that fact. (See CSF ¶ 63.)

[27] The Court notes that Defendant's characterization of why Corcoran did not join this lawsuit in 2017 is a disputed fact. (See CSF ¶¶ 75-77.)

[28] Plaintiffs dispute Defendant's characterization that by signing his Separation Agreement, Corcoran released NAM regarding his SAR claims. (See CSF ¶ 77.)

[29] Defendant replies arguing that "the fact that [Corcoran's] Separation Agreement did not concern the same subject matter as his Award Notices is neither inconsistent with nor does it serve to limit the broad scope of the general release in his Separation Agreement." (Def.'s Reply Br. at 9.) However, as

Court agrees with Plaintiff. As stated above, the parties do not dispute that the material terms of Corcoran's Separation Agreement are the same as Alfandary's and Hansen's Separation Agreements. (See Pls.' Br. at 12 n.13; CSF ¶¶ 60-62.) Thus, as with Alfandary and Hansen, this Court finds that the New York forum selection clause in Corcoran's Separation Agreement controls.

Accordingly, Defendant's motion for summary judgment on Corcoran's claims based on his Separation Agreement is denied.

iii. Where Vicari's Claims Should Be Litigated

Defendant argues that this Court should dismiss Vicari's claims given the forum selection clause in her Award Notice because "Vicari never had a Separation Agreement with NAMA."[30] (See Def.'s Br. at 12.) In opposition, Plaintiffs point to this Court's prior decisions holding that the Court may adjudicate Vicari's claims despite the absence of an executed Separation Agreement between Vicari and NAMA. (See Pls.' Br. at 16; see also Recons. Op. at 8.) Plaintiffs further argue that because "NAM has not renewed its forum non conveniens motion . . . there

stated above, Plaintiffs dispute that Corcoran released NAM of his SARs claim in his Separation Agreement. (See CSF ¶ 77.) The Court finds that this fact is material as it affects this Court's ability to adjudicate Corcoran's claim against Defendant.

[30] Plaintiffs concede that "NAM correctly states that no evidence has emerged that Vicari ever executed a Separation Agreement." (Pls.' Br. at 16.)

is, therefore, no ground for the Court to reconsider its prior decisions." (Pls.' Br. at 17 n.17.) The Court disagrees.

The Court finds it appropriate to reconsider its prior decisions, as Judge Sweet's opinion and this Court's reconsideration motion rely on Plaintiffs' allegations that "it was allegedly NAMA's regular business practice to negotiate the terms of separation with each of its departing executives, covering, among other things, any vested SARs held under the Plans." (Recons. Op. at 8.) Although it is now an undisputed fact that Vicari voluntarily resigned from NAMA in September 2014, (CSF ¶ 58), the parties still dispute whether it was NAMA's regular practice "to not enter into separation agreements with employees who voluntarily resign," (id. ¶ 57), and whether NAMA entered "into a separation agreement with Vicari because she had resigned voluntarily," (id. ¶ 59). Nevertheless, the parties agree that no evidence has emerged that Vicari entered into a Separation Agreement with NAMA. (See Def.'s Br. at 12; Pls.' Br. at 16.) Accordingly, the forum selection clause (designating Tokyo District Court) in Vicari's Award Notice is applicable.

The Court agrees with Defendant that requiring Vicari to litigate her claims against NAM in Japan will not result in Vicari's pursuing overlapping claims in multiple fora. (See

Def.'s Reply Br. at 8.) She will pursue her claims in Tokyo District Court and nowhere else.

Moreover, the Court finds that Defendant did not need to renew its forum non conveniens motion at this stage. Based on the evidence produced in discovery, the forum selection clause in Vicari's Award Notice requires dismissal of her claims. Plaintiffs argue that "due the [sic] pendency of this action in this Court for close to four years, and the multiple proceedings that have taken place including the completion of fact discovery and the exchange of expert reports, the balance of hardships provides additional strong support for retaining the case in this Court." (Pls.' Br. at 17 n.17.) The Court finds Defendant's reference to AIG Mexico Seguros Interamericana, S.A. de C.V. v. M/V ZAPOTECA, 844 F. Supp. 2d 440 (S.D.N.Y. 2012) regarding prejudice to Plaintiffs particularly apt. (See Def.'s Reply Br. at 8 n.10.) In AIG Mexico Seguros Interamericana, this Court held that "whatever lack of fairness Plaintiff claims results from this decision [to dismiss Plaintiff's claims on the eve of trial] is at least equaled by the prospect of subjecting Defendants to trial in a forum they have specifically contracted against." 844 F. Supp. 2d at 444. Here, too the Court finds that it would be unfair to force NAM to proceed in New York.

Accordingly, Defendant's motion for summary judgment on Vicari's claims based on the forum clause in her Award Notice is granted.

c. Plaintiffs' Breach of Contract Claims

Finally, Defendant argues that this Court should grant summary judgment, dismissing Plaintiffs' contract claims for breach of the SAR's Terms and Conditions as a matter of law given the "lack of any genuine dispute that the Plans contemplated and allowed for the pre-IPO extinguishment of former employees' SARs." (Def.'s Br. at 15–16.) Defendant contends that documents and testimony obtained in discovery supports its interpretation of Section 2.(10)(v)(b)(x) of the Terms and Conditions. (Id. at 15-20.) Plaintiffs oppose, arguing that the Court "already rejected as a matter of law NAM's interpretation of Section 2(10)(v)" of the Terms and Conditions, finding that "the agreements do not . . . permit NAM to force a sale before an IPO;" thus, the Court need not consider evidence obtained through discovery to deny Defendant's motion. (Pls.' Br. at 17-18.) The Court first revisits what the Court considered in denying Defendants' motion to dismiss Plaintiffs' contract claims.

Both then and now, the parties dispute the interpretation of Section 2.(10)(v)(b)(X) of the Terms and Conditions for the allotment agreements. In seeking to dismiss Plaintiffs'

contract claims, Defendants raised the same argument as presented here, i.e., that "the contracts purportedly permitted [Defendant] to force former employees to sell their options back to the company before an initial public offering." (Opinion, dated Dec. 6, 2019 [dkt. no. 88] at 11.) However, the Court held that "Defendants' reading of paragraph 2.(10)(v)(b)(x) of the Terms and Conditions . . . finds no support in the text itself." (Id. at 12.) Section 2.(10)(v)(b)(X) states:

> (b) In the case where the Company has not yet implemented the IPO as of the date on which the holder of the Stock Acquisition Rights lost Position with the Company:
>
> (x) Period during which the Stock Acquisition Rights may be exercised:
>
> On or prior to the day three (3) months after the IPO. Provided, however, that if on or prior to the last day of such period the Company has granted the holder of the Stock Acquisition Rights an opportunity to request the Company to purchase the Stock Acquisition Rights (including any alternative action equivalent thereto), the Stock Acquisition Rights shall become unexercisable as of the purchase date which shall be specified by the Company. For the avoidance of doubt, the foregoing proviso shall apply regardless of whether the holders of the Stock Acquisition Rights have requested for the purchase of the Stock Acquisition Rights or not.

(RSF ¶ 197.)

The Court interpreted the contract as a matter of law, noting that Paragraph 2.(10)(v)(b)(x) states that, "if employees left [Defendant] before an IPO, they had three

months after the IPO to exercise their rights and that the company could force them to sell the rights back to it during that 3-month period. It does not state . . . that [Defendant] could force former employees to sell their rights back before an IPO." (Dkt. no. 88 at 12-13.) Thus, because the Court previously adjudicated Defendant's argument as a matter of law, the Court will not reconsider its prior holding. Accordingly, Defendant's motion for summary judgment on Plaintiffs' contract claims is denied.

## III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [dkt. no. 137] is GRANTED in part and DENIED in part. The Clerk of the Court shall close the open motion [dkt. no. 137]. Counsel shall confer and inform the Court by letter no later than April 13, 2022 how they propose to proceed.

**SO ORDERED.**

Dated: March 30, 2022
New York, New York

Loretta A. Preska

LORETTA A. PRESKA
Senior United States District Judge